AO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of:
Computer Data Servers of
YAHOO! in YAHOO!     CASE NUMBER:
account identified as
MISHOLIVET@YAHOO.COM
In the Matter of the Search of

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

I  Timothy Ervin being duly sworn depose and say:

I am a Special Agent of the Federal Bureau of Investigation and have reason to believe that contained in the Computer Data Servers of YAHOO! in YAHOO! account MISHOLIVET.COM

there is now concealed a certain person or property, namely  subscriber information, such as name and address, date of birth, gender, date account created, account status, Yahoo! e-mail address, alternate e-mail address, registration from IP, date ID registered, and log-in IP addresses associated with session times and dates.  For the subscriber identified above, that is MISHOLIVET@YAHOO.COM, the contents of any and all e-mails stored in the subscriber's Yahoo! account.

which is evidence of Concealing a Person from Arrest,
a violation of Title 18 United States Code, Section 1071.  The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.      ☒   YES       NO

TIMOTHY ERVIN, Special Agent
Federal Bureau of Investigation
(202)278-2220

Sworn to before me, and subscribed in my presence

_____        at Washington, D.C.
Date

_____        _____
Name and Title of Judicial Officer              Signature of Judicial Officer

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF : | |
| ALL RECORDS RELATING TO : | |
| MISHOLIVET@YAHOO.COM : | **Magistrate No.** |
| MAINTAINED ON COMPUTER DATA : | **(Under Seal)** |
| SERVERS UNDER THE CONTROL OF : | |
| YAHOO INC. : | |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

Timothy J. Ervin, Special Agent (SA) with the Federal Bureau of Investigation (FBI), Washington Field Office (WFO), Washington, D.C., (hereinafter affiant) being duly sworn, deposes and states as follows:

**I.   INTRODUCTION**

1.   I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I have been an SA with the FBI since 1991. I am currently assigned to a Drug Unit. From 1996 to 2002, and beginning again in 2003, I have been working on federal narcotics investigations and have previously participated in numerous investigations which led to the arrest and conviction of narcotics distributors. Prior to 1996, I was assigned to a counter-intelligence unit in the Federal Bureau of Investigation. Since 1991, I received training and experience in interviewing and interrogation techniques, arrest procedures, search and seizure, narcotics, white collar crimes, search warrant applications, and various other crimes.

2.   In the course of my training and experience, I have become familiar with the methods

and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug conspiracies. In the course of conducting these investigations, your affiant has been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; conducting short and long-term undercover operations, including reverse undercover drug operations; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register and caller identification system data; conducting court-authorized electronic surveillance; and preparing and executing search warrants which have led to substantial seizures of narcotics, firearms and other contraband.

3.      I make this affidavit in support of an application by the United States of America for the issuance of a warrant to search computer server(s) utilized by Yahoo Inc. that contain data relating to particular subscriber(s) associated with [misholivet@yahoo.com](mailto:misholivet@yahoo.com), as described more fully in Attachment A and incorporated by reference herein, for the items described in Attachment B and incorporated by reference herein.

4.      This affidavit is based, in part, upon information provided to me by other Special Agents of the FBI and officers of the Metropolitan Police Department (MPD), information provided by cooperating individuals, controlled purchases of illegal drugs, physical surveillance, and other information gathered during the course of this investigation. Since this affidavit is being submitted for the limited purpose of securing authorization for the search of a premises, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts I believe are necessary to establish probable cause for the issuance of the search warrant requested herein.

5. As a result of my personal participation in this investigation, as well as through interviews with and analysis of reports submitted by other Special Agents of the FBI and officers of the MPD who are involved, I am familiar with all aspects of this investigation. On the basis of this familiarity, and on the basis of other information which I have reviewed and determined to be reliable, I allege the facts to show there is probable cause to believe that the fruits, evidence, and instrumentalities of violations of the following federal offenses, among others, are presently to be found at the premises to be searched described in Section II of this affidavit:

Concealing a Person from Arrest, in violation of Title 18, United States Code § 1071.

## II. PREMISES TO BE SEARCHED

6. The premises to be searched are the computer server(s) (hereinafter "DATA SERVERS") utilized by Yahoo, Inc. that contain data relating to particular subscriber(s). The DATA SERVERS are more fully described in Attachment A, which is incorporated herein by reference. Yahoo Inc.'s corporate headquarters are located at xxxxxxxxxxxxxxxxxxxxxxxxxx.

## III. THE INVESTIGATION

7. This investigation was initiated by the FBI and MPD in June, 2005, based upon information received from a cooperating witness (hereinafter referred to as "CW-1"), who has provided truthful information on numerous occasions about drug traffickers and has never provided any false information. CW-1 provided specific information regarding a large-scale Guatemalan narcotics trafficking organization operating in Guatemala, Florida, Maryland and Washington, D.C. Subsequent investigation by the FBI determined ROLANDO MARROQUIN, MARTIN GUERRA

and PEDRO PABLO RAMIREZ MEJIA were members of that organization.

8.  A second cooperating witness (CW-2) and a third cooperating witness (CW-3), both of whom have provided truthful information on numerous occasions about drug traffickers and have never provided any false information, were able to conduct controlled purchases of cocaine from GUERRA.  A total of three controlled purchases of cocaine were made from GUERRA.  The following information details the controlled purchases conducted by CW-2 and CW-3:

a.  On February 28, 2006, CW-2 conducted a controlled purchase of cocaine for $5,000 [the DEA laboratory determined the substance purchased was 248.8 grams of cocaine HCL with a purity of 87%] from MARTIN GUERRA near the intersection of Riggs Road and South Dakota Avenue, N.E., Washington, D.C.

b.  On March 16, 2006, CW-2 again conducted a controlled purchase of cocaine for $5,000 [the DEA laboratory determined the substance purchased was 249.8 grams of cocaine HCL with a purity of 87%] from MARTIN GUERRA near the intersection of Riggs Road and South Dakota Avenue, N.E., Washington, D.C.

c.  On October 6, 2006, CW-3 conducted a controlled purchase of cocaine for $19,500 [the DEA laboratory determined the substance purchases was 1002 grams of cocaine HCL with a purity of 91%] from MARTIN GUERRA in the 9400 block of Adelphi Road, Adelphi, Maryland.

9.  On November 15, 2006, MARTIN GUERRA was arrested by the FBI.  A search of GUERRA's residence resulted in the seizure of approximately seven kilograms of cocaine and over $91,000.  During the search, MISHELLE OLIVET arrived at the home.  She advised she was the owner of the home, and a current student at Montgomery College.  OLIVET confessed that she was an illegal alien in the United States, and had participated in a fraudulent marriage on September 27,

2006, which she hoped would improve her immigration status. Another item seized during the search was a piece of paper on which was written the e-mail address misholivet@yahoo.com.

10.     GUERRA agreed to cooperate with the government, and subsequently entered a guilty plea to the charge of Conspiracy to Distribute Cocaine. GUERRA indicated that he was a member of a large cocaine trafficking organization led by ROLANDO MARROQUIN in Guatemala. GUERRA later identified a photo of PEDRO PABLO RAMIREZ MEJIA as being another member of the same organization who was known to GUERRA as PABLO. GUERRA was released so that he could cooperate operationally with the FBI.

11.     On November 18, 2006, GUERRA participated in several consensually recorded telephone calls with MARROQUIN. In those calls, MARROQUIN directed GUERRA to meet with and collect money from an unknown man in a parking lot in Wheaton, Maryland. The FBI conducted surveillance that afternoon and observed GUERRA meet with an unknown Hispanic male who gave GUERRA a bag. GUERRA then drove out of the area and met with agents to turn over the bag. The bag was determined to contain $172,015.

12.     On November 20, 2006, MARROQUIN called GUERRA and instructed GUERRA to give PABLO the $172,015 he had received on November 18, 2007, and an additional $54,955 which GUERRA had collected before his arrest. The $54,955 had been seized during the search of GUERRA's residence. Those funds were released by the FBI to GUERRA, and PABLO instructed GUERRA to meet him at a Shell gas station on Riggs Road near the intersection of University Boulevard, in Hyattsville, Maryland. GUERRA took a total of $226,970 to that meeting. The FBI conducted surveillance of the meeting between GUERRA and PABLO, which took place in a vehicle with interior audio and video recording equipment. PABLO told GUERRA that he was too nervous

to take the money at that time, and asked GUERRA to hold it until a later date. Your affiant believes PABLO's nervousness was the result of the MARROQUIN organization having over 18 kilograms of cocaine and over 18 kilograms of heroin seized in Connecticut and New Jersey by law enforcement on November 13, 2006. GUERRA drove out of the area, and returned the $226,970 to the FBI.

13. On November 25, 2006, MARROQUIN again directed GUERRA to meet MEJIA. GUERRA called MEJIA and they agreed to meet in Falls Church, Virginia. GUERRA picked up MEJIA in Falls Church, and they drove to a Sears store. At the store, they purchased six Winnie The Pooh baby gift sets. They then drove to an Econo Lodge hotel on New Hampshire Avenue, Hyattsville, Maryland, and checked into a room. Inside the room, MEJIA showed GUERRA how to wrap the currency and conceal it inside the Winnie The Pooh gift sets. Of the $226,970, MEJIA concealed all but $3,017 in three of the gift set boxes. Of the remaining $3,017, MEJIA placed $1,000 in his pocket and gave $2,017 back to GUERRA. MEJIA did not want the $2,017 because it was all in one dollar bills, and was too bulky to conceal easily. They then drove to the Shell gas station on Riggs Road. MEJIA exited the vehicle with the three gift boxes containing the concealed currency.

14. On December 5, 2006, MARROQUIN instructed GUERRA to once again meet with the unknown Hispanic male in Wheaton, Maryland, to pick up money. FBI surveillance was conducted as GUERRA met with the unknown man that evening. That man was observed placing something into the vehicle driven by GUERRA. GUERRA then met with the FBI and turned over a bag containing $137,890 in currency and $5,000 in Western Union money orders.

15. MARROQUIN later informed GUERRA it would now be his responsibility to

package the money before giving it to MEJIA.  As a result, on December 15, 2006, FBI agents assisted GUERRA in packaging $172,907 into two Winnie The Pooh gift sets.  That amount comprised the $137,890 in currency and $5,000 in money orders received on December 5, 2006, the $2,017 left by MEJIA on November 25, 2006, as well as $36,000 in FBI drug buy money which was owed to MARROQUIN for payment for two of the seven kilograms of cocaine seized during the search of GUERRA's residence on November 15, 2006.  Deducted from those funds were $8,000 which MARROQUIN had instructed GUERRA to use to purchase parts for a luxury automobile.

16. On December 18, 2006, MARROQUIN instructed GUERRA to meet with MEJIA.  GUERRA talked to MEJIA and they agreed to meet at the Shell gas station on Riggs Road in Hyattsville, Maryland.  FBI surveillance observed MEJIA enter the vehicle driven by GUERRA, and they were followed to an address in Falls Church, Virginia.  MEJIA exited GUERRA's vehicle with the two gift set boxes containing $172,907.

17. On January 22, 2007, MARROQUIN instructed GUERRA to meet with MEJIA.  GUERRA talked to MEJIA and they agreed to meet at an address on University Boulevard, Hyattsville, Maryland.  FBI surveillance observed them meeting at that address.  Prior to the meeting, GUERRA had been given $18,000 in FBI funds, which represented payment for one more of the seven kilograms seized from GUERRA's residence.  GUERRA drove MEJIA to the Shell gas station on Riggs Road, Hyattsville, Maryland.  MEJIA got out of the vehicle with the $18,000 and walked away..

18. Examination of Customs records determined MEJIA travels between Guatemala and the United States on a very frequent basis.  It appears he has a pattern of flying on Friday evenings on Taca flight 598 from Guatemala City to Dulles Airport, and taking return flights on Tuesday

mornings on Taca flight 573 from New York's John F. Kennedy (JFK) airport to Guatemala City. This pattern corresponds with the phone conversations GUERRA has had with MARROQUIN. During the weeks when GUERRA would give money to MEJIA, MARROQUIN would usually call GUERRA on Tuesdays to let him know that the funds had safely arrived in Guatemala.

19.  On the morning of February 1, 2007, GUERRA and OLIVET broke off contact with the FBI, discontinued use of all their cellular telephones, and moved out of the home on Redmiles Drive. The last contact between GUERRA or OLIVET and the FBI occurred on the evening of January 31, 2007. GUERRA and OLIVET also discontinued use of all their credit cards as of January 31, 2007. There has been no contact with GUERRA between that date and today's date. A warrant has been issued for GUERRA's arrest. GUERRA is no longer cooperating in this investigation. On or about January 31, 2007, OLIVET stopped working at a job she had held for six years, and broke off contact with her employer. A substantial body of evidence has been developed which indicates GUERRA and OLIVET fled together, and OLIVET is assisting GUERRA's flight.

20.  Pursuant to an administrative subpoena, Yahoo! advised the FBI that e-mail account misholivet@yahoo.com is registered to Mishele Olivet, xxxx xxxxxxxx xxxxx, xxxxxx xxxxxx, xxxxxxxx. The account has been in service since August of 1999. Yahoo! provided the FBI with an e-mail account usage log for misholivet@yahoo.com, which showed that the account was last used on the evening of January 31, 2007. The log also indicated OLIVET's e-mail account was accessed on 42 occasions in the last two weeks of January, 2007. It is believed OLIVET may have used her e-mail account to plan and prepare for GUERRA's flight. It is also believed the content of those e-mails may contain valuable evidence which could lead to GUERRA's apprehension.

21.  In the weeks preceding his flight, GUERRA had participated in recorded

8

conversations in which MARROQUIN had told GUERRA that he would soon be collecting between $1,000,000 and $1,500,000 in narcotics proceeds. Additionally, MARROQUIN told GUERRA he would soon be receiving a load of 100 kilograms of cocaine. GUERRA believed he would be receiving that currency and cocaine in the first two weeks of February.

22. On February 12, 2007, MEJIA was arrested in Hyattsville, Maryland. At the time of his arrest, he was in possession of over $70,000. At the time of his arrest, MEJIA gave a statement in which he advised it was his intention to transport the currency to Guatemala the next day. MEJIA also indicated he had spoken with GUERRA by telephone on the day of his arrest, and GUERRA gave MEJIA specific instructions regarding the collection of a portion of the currency seized from MEJIA.

**IV.   ITEMS TO BE SEIZED**

23. Your affiant believes evidence of the planning and preparation of the fugitive flight of GUERRA, such as subscriber information, electronic mails, payment transactions, access logs, distribution records, and billing records, as described more fully in Attachment B, will be found on the DATA SERVERS described in Attachment A. Yahoo Inc., which utilizes the DATA SERVERS as part of its business, upon receipt of a search warrant, will gather the evidence described in Attachment B from the DATA SERVERS and provide that evidence to the FBI.

**V.   REQUEST FOR NON-DISCLOSURE**

24. Since the investigation is continuing, your affiant requests that the compliance with this warrant be sealed until such time as the Court directs otherwise. Disclosure of search warrant compliance at this time would seriously jeopardize the ongoing investigation, as such disclosure may

provide an opportunity to destroy evidence, change patterns of behavior, notify confederates, or allow confederates to continue flight from prosecution. The investigation in this matter is continuing and it is anticipated that additional search warrants may be executed at other locations in the near future.

## VI.  CONCLUSION

25.     Based on the information outlined above, the undersigned submits that there is probable cause to believe that the items identified in Attachment B contain evidence of the fugitive flight of GUERRA, and will be found on the DATA SERVERS as described in Attachment A.

<br>

                                    TIMOTHY J. ERVIN, Special Agent
                                    Federal Bureau of Investigation

Sworn and subscribed to before me this _____ day of February, 2007.

                                    ALAN KAY
                                    United States Magistrate Judge
                                       for the District of Columbia